# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**LEON LAMAR TROTTER**                                                       **PETITIONER**

**V.**                                                                          **NO. 4:23-CV-2-DMB-JMV**

**CHAD LODEN, Warden; and**
**LYNN FITCH, Attorney General**
**of the State of Mississippi**                                                 **RESPONDENTS**

### ORDER

Leon Lamar Trotter filed objections to United States Magistrate Judge Jane M. Virden's report recommending the denial of his 28 U.S.C. § 2254 habeas petition. Because Trotter's objections are without merit, the report and recommendation will be adopted and Trotter's habeas petition will be denied.

### I
### Procedural History

On January 5, 2023, Leon Lamar Trotter filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of Mississippi. Doc. #1. At the direction of United States Magistrate Judge Jane M. Virden, the respondents filed a response to the petition on April 14, 2023. Docs. #8, #10. Trotter replied to the response on May 12, 2023.[1] Doc. #14.

On December 8, 2023, United States Magistrate Judge Jane M. Virden issued a Report and Recommendation ("R&R") recommending that Trotter's habeas petition be denied.[2] Doc. #19 at 17. Trotter filed objections to the R&R on December 21, 2023. Doc. #20. After obtaining an

---

[1] Trotter's reply includes a request for oral argument on the petition. Doc. #14 at 1. On May 18, 2023, the respondents filed "Respondents' Response to Petitioner's Request for 'Oral Argument' in Reply to Answer." Doc. #15 at 2–4.

[2] The R&R also recommends that Trotter's request for oral argument be denied. Doc. #19 at 9.

extension, the respondents filed a response to the objections on January 12, 2024.[3] Docs. #23, #24.

## II
## Standards

### A. Objection to R&R

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report … to which objection is made." However, "the Court need not consider '[f]rivolous, conclusive or general objections.'" *Johnson v. Morris*, No. 3:18-cv-392, 2021 WL 3173604, at *2 (S.D. Miss. July 27, 2021) (quoting *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)). And a party cannot "'raise a factual objection by merely re-urging arguments contained in the original petition.'" *Id.* (quoting *Edmond v. Collins*, 8 F.3d 290, 293 n.7 (5th Cir. 1993)).

### B. 28 U.S.C. § 2254

A prisoner who is in custody pursuant to a state court judgment and sentence has a right of relief under 28 U.S.C. § 2254, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Section 2254 "imposes a 'highly deferential standard for evaluating state-court rulings,' … 'and demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S.

---

[3] One week later, Trotter moved for leave to file a reply brief in support of his objections, Doc. #25, which the Court denied, Doc. #26.

766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Regarding 28 U.S.C. § 2254(d)(1), the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "When a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 112 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

### III
### Relevant Background

On June 16, 2004, a Humphreys County Circuit Court jury convicted Leon Lamar Trotter of one count of first-degree murder[4]—a crime he committed at age seventeen. Doc. #11-1 at PageID 187–88; Doc. #11-8 at PageID 1048. The same day, the circuit court judge sentenced Trotter to life in prison without the possibility of parole ("LWOP"). Doc #11-1 at PageID 186–88. On appeal by Trotter, the Mississippi Court of Appeals affirmed Trotter's conviction and sentence on September 23, 2008. *Trotter v. State*, 9 So. 3d 402 (Miss. Ct. App. 2008).

#### A. Post-Conviction Relief Motion

On July 31, 2012, the Mississippi Supreme Court granted Trotter's request to file a post-conviction relief ("PCR") motion asserting ineffective assistance of counsel and requesting a new trial. Doc. #11-6 at PageID 856–74; Doc. #11-8 at PageID 1046. Nearly one year later, on June 24, 2013, Trotter requested leave from the Mississippi Supreme Court to file a supplemental PCR

---

[4] The Indictment charged Trotter with murder "in violation of Section 97-3-19(1)(a) of the Mississippi Code of 1972," Doc. #1-1 at PageID 152, which provides that "[t]he killing of a human being … [w]hen done with deliberate design to effect the death of the person killed, or of any human being, shall be first-degree murder."

3

motion "to add a *Miller* claim to those claims brought in his original Application and Motion"[5] because "[i]t was only after [the Mississippi Supreme] Court granted [his] original Petition that [his] counsel … realized that [he] had a claim arising under *Miller v. Alabama*."[6]  Doc. #11-6 at PageID 802–03.  The Mississippi Supreme Court interpreted Trotter's request for leave as seeking either to "vacate [his] life sentence and remand this case for a new sentencing hearing or, alternatively, … to file a motion for post-conviction collateral relief in the circuit court."  Doc. #11-8 at PageID 1048.  On October 15, 2014, the Mississippi Supreme Court granted Trotter leave to file a supplemental PCR motion in the Humphreys County Circuit Court but it did not vacate Trotter's sentence.  *Id.* at PageID 1048–49.

Trotter filed a pro se PCR motion on July 29, 2016, asserting an ineffective assistance of counsel claim, requesting a new trial, and arguing that "[t]he United States Supreme Court's decision in *Miller v. Alabama* renders [his] life without parole sentence unconstitutional because he was under 18 years old at the time of his crime and [his] sentence was mandatory under Mississippi law."  *Id.* at PageID 1058, 1068, 1074, 1078, 1085.  Three months later, on October 25, 2016, Trotter, through counsel, filed a "Motion for Post-Conviction Relief and to Hold a Resentencing Hearing," raising the same claims as his July 29 pro se motion.  *Id.* at PageID 1127, 1131, 1134, 1136, 1141.

### B.  Hearing and Denial of Post-Conviction Relief

On April 24, 2018, Trotter, through new counsel, moved for an evidentiary hearing and/or resentencing hearing on his October 25 PCR motion.  Doc. #11-9 at PageID 1201, 1208.  The

---

[5] "Trotter had not yet proceeded under his original Motion in the trial court."  Doc. #11-6 at PageID 803.

[6] *See* 567 U.S. 460, 489 (2012) ("[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. … [because] requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole … violate[s] … the Eighth Amendment's ban on cruel and unusual punishment.").

4

circuit court granted the motion on May 30, 2018, finding (1) Trotter "[wa]s entitled to an evidentiary hearing because he ha[d] successfully alleged … ineffective assistance of counsel;" and (2) "a new sentencing hearing in which the consideration of all circumstances required by *Miller* are weighed as factors in determining his sentence" was warranted. *Id.* at PageID 1212–13 (emphasis added). On September 17, 2018, Trotter filed a brief regarding his October 25 PCR motion which provided additional support for his claims, including his *Miller* claim. *Id.* at PageID 1229, 1237–43. The circuit court held a hearing on the motion on September 24, 2018, and September 28, 2018. Doc. #11-11 at PageID 1397, 1407, 1541. On November 21, 2018, it denied Trotter's request for a new trial and resentencing, finding with respect to his *Miller* claim that "after hearing evidence from the State of Mississippi and … Trotter and considering the *Miller* factors[,] … Trotter does not qualify as a juvenile entitled to a sentence making him eligible for parole consideration." Doc. #11-9 at PageID 1297, 1300–01.

On December 3, 2018, Trotter moved the circuit court to alter or amend its ruling and to grant a resentencing hearing on grounds that the circuit court's "order rejecting [his] resentencing argument did not have the benefit of any evidence or testimony on the relevant factors under *Miller v. Alabama*." *Id.* at 1302, 1311. Following a hearing on September 11, 2019, the circuit court denied the motion to alter or amend.[7] Doc. #11-14 at PageID 2119; Doc. #11-12 at PageID 1604. On Trotter's appeal, the Mississippi Court of Appeals affirmed the decision on May 31, 2022, because his "claim[] that he did not receive a *Miller* hearing and was denied the opportunity to present mitigating evidence related to his youth and attendant characteristics" "is contradicted by

---

[7] On September 11, 2019, the circuit court also denied Trotter's "Motion for Funds for Expert Assistance in the Field of Psychology," filed March 1, 2019; "Motion for Funds for Expert Assistance in the Field of Mitigation Assistance," filed May 28, 2019; and "Motion for Jury Sentencing Pursuant to *Miller v. Alabama*," filed May 28, 2019. Doc. #11-14 at PageID 2119 (emphasis added). The order denying these motions and the December 3, 2018, motion to amend was filed December 16, 2019. *Id.*

5

the record;" thus, "Trotter was given the opportunity to make a showing that his life-without-parole sentence was unconstitutional, but he failed to do so." *Trotter v. State*, 353 So. 3d 484, 494, 495 (Miss. Ct. App. 2022).

Trotter filed an amended petition for a writ of certiorari in the Mississippi Supreme Court on October 11, 2022. Doc. #11-16 at PageID 2412, 2426. The Mississippi Supreme Court denied Trotter's petition for writ on January 4, 2023. *Trotter v. State*, 353 So. 3d 1098 (Miss. 2023); Doc. #11-16 at PageID 2412.

### C. Federal Habeas Petition and R&R

The next day, on January 5, 2023, Trotter filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254, asserting two grounds. Doc. #1. In Ground One, Trotter argues:

> Both the trial court and the Mississippi Court of Appeals violated [his] constitutional rights because, rather than vacating his sentence and providing him the discretionary sentencing procedure required by the Constitution, they applied an incorrect standard which was contrary to the U.S. Supreme Court precedent [under *Miller*].

*Id.* at 3, 4. In Ground Two, Trotter submits:

> At the time of [his] [September 2018] PCR hearing and subsequent order denying relief, Mississippi law required that [his] mandatory LWOP sentence be vacated and his case remanded for a discretionary sentencing procedure. The Mississippi Court of Appeals, however, affirmed the denial of PCR relief based on Mississippi case law decided after [his] PCR hearing.

*Id.* at 5–6.

In recommending that Trotter's petition be denied, Judge Virden concluded that "[t]he circuit court was not required to vacate Trotter's sentence;" and that "Trotter did, in fact, receive a discretionary sentencing hearing and his constitutional rights were not violated by application of state law adopted after [his discretionary sentencing] hearing."[8] Doc. #19 at 10, 13. Regarding

---

[8] Judge Virden rejected the respondents' argument that Trotter's petition was untimely. Doc. #19 at 9–10.

6

the hearing issue, Judge Virden specifically found that Trotter's September 2018 hearing on his PCR motion qualified as a discretionary sentencing hearing sufficient to meet *Miller*'s requirements. *Id.* at 13.

## IV
## Objections to R&R

"[S]eek[ing] to have his original sentence vacated and his case returned to the circuit court for re-sentencing under *Miller*," Trotter argues as objections to the R&R that (1) "the State did not vacate [his] original sentence and provide him a discretionary proceeding under *Miller* and the R&R held the State was not required to, in violation of [his] constitutional rights;" and (2) "the State, and now the R&R, required [him] to follow a procedure which was not the law at the time and only became the law years after these events."[9] Doc. #20 at 1. Essentially, Trotter objects to the R&R's conclusions that (1) the circuit court was not required to vacate his sentence, and (2) he received a discretionary sentencing hearing "and his constitutional rights were not violated by application of state law adopted after [his] hearing." Doc. #19 at 10, 13.

"In *Miller*, the Supreme Court of the United States concluded that mandatory life sentences without parole for juvenile homicide offenders violate the Eighth Amendment's prohibition on cruel and unusual punishments." *Chandler v. State*, 242 So. 3d 65, 68 (Miss. 2018) (citing *Miller*, 567 U.S. at 469–70). Thus, "a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing." *Montgomery v. La.*, 577 U.S. 190, 193–94

---

[9] Trotter also "respectfully requests oral argument on his petition for habeas corpus and his objections to the R&R because of the complexity of the procedural history and the importance of the issues in the present cause." Doc. #20 at 2. This Court agrees with the R&R that "the record before it is sufficient to decide the issues in this case." Doc. #19 at 9; *see Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000) (Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims").

7

(2016) (citing *Miller*). The Mississippi Supreme Court has specifically held that "*Miller* does not prohibit sentences of life without parole for juvenile offenders. Rather, it 'require[s] [the sentencing authority] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Parker v. State*, 119 So. 3d 987, 995 (Miss. 2013) (quoting *Miller*, 567 U.S. at 480). And because "*Miller* announced a substantive rule of constitutional law," it applies retroactively. *Montgomery*, 577 U.S. at 212.

### A. Requirement to Vacate Sentence?[10]

In the R&R, Judge Virden found that "[t]he circuit court was not required to vacate Trotter's sentence" because (1) there is "no precedent *requiring* that the mandatory LWOP sentence be vacated before the discretionary sentencing procedure occurs;" and (2) Trotter's case resembles the facts in *McGilberry v. State*[11] where "the Mississippi Supreme Court found that the trial court should *not* have vacated the defendant's sentence in 2015 before considering his PCR motion." Doc. #19 at 10–11 (emphases in original). In his objections, Trotter argues that there was "**not a single** reported Mississippi appellate decision at the time [that] called for any … procedure" other than vacating the sentence and remanding for a discretionary sentencing hearing "to cure the constitutional defect of the imposition of a mandatory LWOP sentence on a juvenile." Doc. #20 at 11 (emphases in original).[12] The respondents counter that Mississippi courts "[were]

---

[10] In his objections filing, Trotter separates his arguments into two categories: (1) his "constitutional rights were violated by application of state law adopted after [his] post-conviction relief hearing;" and (2) "[t]he Mississippi courts violated *Miller* … by failing to vacate [his] sentence." Doc. #20 at 10, 18. Because it is unclear whether Trotter intended these to be separate objections and because his argument that the Mississippi courts misapplied *Miller* in refusing to vacate his sentence hinges on the application of Mississippi state law, the Court addresses both arguments together in this section.

[11] 292 So. 3d 199 (Miss. 2020). Judge Virden noted that the "[t]he … order granting the defendant leave to file a PCR motion" in *McGilberry* "resembled the Mississippi Supreme Court Order affording Trotter the opportunity to file a PCR motion," and "[i]n both orders the motion to vacate was not granted, only the portion of the motion for leave to file the PCR motion was granted." Doc. #19 at 11–12 (emphasis in original).

[12] Trotter argues in his objections that he "**did not** seek an evidentiary hearing on his *Miller* claim" and that his PCR motion "was entitled 'Motion to Set Evidentiary Hearing and/or Resentencing Hearing' simply because the trial court had not yet vacated [his] mandatory LWOP sentence." Doc. #20 at 3 & 3 n.2 (emphases in original). And while

8

not required to vacate Trotter's sentence prior to holding a *Miller* hearing."[13]  Doc. #24 at 9.

The United States Supreme Court did not "establish[] a specific procedure for lower courts to follow when sentencing juvenile homicide offenders; rather[,] … [it identified] several important features of youth that would be relevant to the sentencing decision." *Chandler*, 242 So. 3d at 68. "The Supreme Court has left to the states the responsibility to determine how *Miller* is to be implemented in state-court proceedings and how to remedy a *Miller* violation or potential violation." *Wharton v. State*, 298 So. 3d 921, 926 (Miss. 2019).  The United States Supreme Court made clear, however, that "[g]iving *Miller* retroactive effect … does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole." *Montgomery*, 577 U.S. at 212. *Miller* requires only "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors." *Id.* at 210 (quoting *Miller*, 567 U.S. at 483).

The Mississippi Supreme Court "has been inconsistent" in how it has retroactively applied *Miller*. *McGilberry*, 292 So. 3d at 202 n.4.  From 2013 to 2015, Mississippi appellate decisions applying *Miller* vacated the sentence of the defendant at issue before holding a discretionary sentencing hearing.[14]  Trotter points to these decisions as proof that the Mississippi courts reviewing the circuit court's September 2018 decision on his PCR motion "punished [him] for following existing Mississippi law" "and not correctly predicting that the Mississippi law would"

---

Trotter concedes that when the circuit court granted the motion it did so in part to consider his sentence in light of *Miller*, his "pro bono counsel understood this to mean that when the Court vacated the sentence, [he] would get a 'new sentencing hearing' which would cover the *Miller* factors." *Id.* at 4.

[13] To the extent the respondents argue that "Trotter's Objections re-urge or simply restate his previous submissions to this Court," Doc. #24 at 5, the Court disagrees as Trotter specifically objects to the R&R's application of law.

[14] *Jones v. State*, 122 So. 3d 698, 703 (Miss. 2013); *Parker*, 199 So. 3d at 998 (Miss. 2013); *Hudspeth v. State*, 179 So. 3d 1226, 1226–28 (Miss. Ct. App. 2015) (affirming trial court decision to re-sentence Hudspeth to LWOP after trial court vacated original sentence); *Thomas v. State*, 130 So. 3d 157, 159–60 (Miss. Ct. App. 2014).

find a hearing on a PCR motion sufficient under *Miller* in *Wharton*—decided one year after his September 2018 hearing. Doc. #20 at 10–11, 19. Trotter argues that the Mississippi courts not only failed to vacate his sentence and remand his case for resentencing but also violated his constitutional rights by both ignoring state law precedent at the time of his hearing and applying state law adopted after his September 2018 hearing. *Id.* at 10, 18. According to Trotter, the R&R "continue[d] the application of subsequent law to fault [his] conduct in 2018" by relying on *McGilberry*. *Id.* at 19.

The Court disagrees with Trotter's assessment. First, there appears to be no Mississippi Supreme Court precedent ever *requiring* courts to vacate a sentence before holding a discretionary sentencing hearing. Second, though Trotter characterizes the *Wharton* decision as "expressly stat[ing] that … the [prior] procedure was 'to vacate the petitioner's original sentence **and** remand for a new sentencing hearing,'" Doc. #20 at 11 (quoting *Wharton*, 298 So. 3d at 927) (emphasis in original), *Wharton* never held that vacating a sentence before a sentencing hearing was the *required* procedure, and it clarified that while prior Mississippi courts "found it necessary to vacate the petitioner's original sentence and remand for a new sentencing hearing, [they] did so before *Montgomery*." 298 So. 3d at 927. Third, because *Montgomery* was decided before Trotter's September 2018 hearing and clarified that *Miller* does not require states to relitigate sentences when it is applied retroactively,[15] the Mississippi courts had clearly established federal law decided before the September 2018 hearing to support their decision not to vacate Trotter's sentence. Finally, *McGilberry* highlights only that, after *Montgomery*, the Mississippi Supreme Court explicitly found it appropriate not to vacate a sentence before evaluating a PCR motion under *Miller*. *See McGilberry*, 292 So. 3d at 206 (after *Miller* and *Montgomery* "[w]hat should have

---

[15] *Montgomery*, 577 U.S. at 212.

10

occurred was the simple denial of McGilberry's PCR motion, not resentencing him to life without parole based on the denial of [his] PCR motion").

Because there was no Mississippi Supreme Court precedent requiring Trotter's sentence to be vacated before a discretionary sentencing hearing and because before Trotter's September 2018 hearing the United States Supreme Court explicitly ruled that retroactive application of *Miller* does not require states to relitigate sentences, the Mississippi courts did not act unreasonably in declining to vacate Trotter's sentence and remand him for resentencing, and they did not unconstitutionally apply state law retroactively when upholding the circuit court's decision. Because the R&R is correct not to "disturb [these] decision[s]," *Shinn*, 592 U.S. at 112, Trotter's objection is overruled.

### B. Discretionary Sentencing Hearing

While Judge Virden found that Trotter's September 2018 hearing on his PCR motion qualified as a discretionary sentencing hearing under *Miller*, Trotter objects that it does not qualify because "there was no evidence presented … on the *Miller* factors, and thus no basis on which the circuit could make any reasoned decision."[16] Doc. #20 at 13. The respondents argue that Trotter brought forward a *Miller* argument at the hearing and because the circuit court evaluated his sentence pursuant to *Miller*, the hearing was sufficient. Doc. #24 at 10–12.

The Mississippi Supreme Court requires courts to "take into account" the factors identified in *Miller* before sentencing. *Miller*, 567 U.S. at 480; *see Parker*, 119 So. 3d at 995–96 (trial court must consider *Miller* factors before determining sentence for juvenile petitioner serving LWOP).

---

[16] Trotter also argues that "under Mississippi law, *Miller*'s individualized sentencing requirement could not and cannot be satisfied in a PCR hearing because courts are not authorized to grant PCR unless the petitioner can show that the 'sentence is unconstitutional,' *Wharton*, 298 So. 3d at 927, or is otherwise illegal. *See* Miss. Code Ann. § 99-39-5(1)." Doc. #20 at 13. As discussed above, the argument is contradicted by *Montgomery*'s determination that *Miller* does not automatically require courts to relitigate a sentence (and thus find the sentence unconstitutional) before assessing the *Miller* factors as applied to a petitioner's sentence. *Montgomery*, 577 U.S. at 210–12.

11

Such factors are:

> [The] [c]hronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences[;] … the family and home environment that surrounds [the defendant]—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional[;] … the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] … [whether] he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] … [and] the possibility of rehabilitation.

*Parker*, 119 So. 3d at 995–96 (quoting *Miller*, 567 U.S. at 477–78). But trial courts are not required "to issue findings on each factor." *Chandler*, 242 So. 3d at 68. And the petitioner bears the burden of "convinc[ing] the sentencing authority that *Miller* considerations are sufficient to prohibit" a LWOP sentence. *Jones*, 122 So. 3d at 702.

Trotter's argument that he was not given the opportunity to present evidence on "any issue relating to [his] *Miller* claim"[17] is contradicted by the record. Trotter sought to file a supplemental PCR motion solely to include an argument that his sentence was unconstitutional under *Miller*; the circuit court granted Trotter an evidentiary hearing in part to consider his sentence in light of *Miller*; and Trotter filed a brief before the hearing, providing additional support for all his claims, including his *Miller* claim. Doc. #11-9 at PageID 1213, 1237. During the hearing, Trotter's counsel both opened and closed on his *Miller* claim, specifically arguing in closing:

> Trotter's seeking three grounds of relief. The first is that he must be resentenced in his current sentence vacated because at the time of this crime he was a juvenile and he was convicted of murder without the possibility of parole. And subsequent law specifically the Miller versus Alabama case, by the United States Supreme Court has ruled that in all but the most extreme circumstances such as sentence for a juvenile is unconstitutional. So at a minimum, whatever happens here today on these other issues, the Court to be consistent with Miller versus Alabama must vacate the prior sentence and reinstate another sentence.

---

[17] Doc. #20 at 6–7.

Doc. #11-11 at PageID 1409; Doc. #11-12 at PageID 1568–69, 1589–90. After the hearing, the circuit court evaluated the *Miller* factors[18] before declining to vacate Trotter's sentence and remand his case for resentencing.[19] This Court agrees with both the R&R and the Mississippi Court of Appeals that while Trotter may have wished to provide more evidence relevant to his *Miller* claim, such does not change that he was afforded the opportunity to argue for resentencing under *Miller* at the September 2018 hearing and that the circuit court then evaluated the *Miller* factors he presented. *See Parker*, 119 So. 3d at 999 ("[a]fter consideration of all circumstances required by *Miller*, the trial court may sentence [the defendant]").[20] Because the Mississippi courts did not act unreasonably in finding the September 2018 hearing on Trotter's PCR motion sufficient to meet the criteria established under *Miller*, and this Court agrees with the R&R that it qualified as a sufficient discretionary sentencing hearing, Trotter's objection is overruled.

## V
## Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Proceedings in the United States District Courts requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made

---

[18] Trotter disagrees with the circuit court's assessment of the *Miller* factors, arguing in his objections that it was required to automatically find he had certain characteristics when he committed the crime as a minor. Doc. #20 at 14. But the Mississippi Supreme Court has been clear that *Miller* "identified multiple juvenile characteristics and circumstances" for the sentencing authority "to take into account," not as a blanket application to all juveniles sentenced to LWOP. *See Jones*, 122 So. 3d at 700.

[19] The circuit court held that "[t]here was no evidence that Trotter was immature for his age;" "it appeared …he acted with premeditation;" "[t]he evidence at the hearing clearly showed that Trotter had a caring and loving family;" "[t]he jury did not accept [his] defenses;" "Trotter acted as the leader of the crime, no peer pressure or other pressure affected his decision to shoot;" "[t]here [wa]s no evidence that Trotter was incompetent because of his youth;" and "there [wa]s no evidence of the possible rehabilitation of Trotter." Doc. #11-10 at PageID 1376–77.

[20] Trotter also submits that because *Wharton* was the first time the Mississippi Supreme Court held "that *Miller*'s procedural requirement can be satisfied by holding an evidentiary hearing in the post-conviction manner, rather than by vacating the mandatory life-without-parole sentence and holding a new sentencing hearing," his "*Miller* resentencing hearing would, and could, take place ***only*** if [the] challenge to [his] conviction was denied and ***only*** after his sentence had been vacated and the case remanded." Doc. #20 at 4, 6. But as explained above, the Mississippi court's decision declining to vacate Trotter's sentence was supported by clearly established federal law.

13

a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the *Slack* criteria, the Court concludes a COA should not issue in this case.

## VI
## Conclusion

Trotter's objections to the R&R [20] are **OVERRULED**. The R&R [19] is **ADOPTED** as the order of the Court. Trotter's habeas petition [1] is **DENIED**. A certificate of appealability is **DENIED**. A final judgment will issue.

**SO ORDERED**, this 2nd day of August, 2024.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

14